UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jenelle Thomas,

                        Plaintiff,                  **MEMORANDUM OPINION
                                                          AND ORDER**
     v.                                                          Civil No. 07-3323 ADM/JSM

Hamline University and Kathy McLane,
individually,

                        Defendants.

___

Mark A. Greenman, Esq., Law Office of Mark A. Greenman, Minneapolis, MN, appeared for and on behalf of the Plaintiff.

Edward M. Laine, Esq., and Meghan M. Anzelc, Esq., Oppenheimer Wolff & Donnelly LLP, Minneapolis, MN, appeared for and on behalf of the Defendants.

___

## I. INTRODUCTION

On September 30, 2008, the undersigned United States District Judge heard oral argument on Defendants Hamline University ("Hamline") and Kathy McLane's[1] ("Dr. McLane"), Motion for Summary Judgment [Docket No. 11]. In her Complaint [Docket No. 1], Plaintiff Jenelle Thomas ("Thomas") alleges that Hamline discriminated against her in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213 and the Minnesota Human Rights Act ("MHRA"), Minn. Stat. §§ 363A.01-41; and that Dr. McLane aided and abetted in the alleged discrimination.[2] For the reasons set forth below, the Defendants' Motion

---

[1] Since the commencement of this suit, McLane has changed her name to Kathy Thomsen. The Court will refer to her as McLane to remain consistent with the caption.

[2] The Complaint asserted an additional privacy right claim for "intrusion upon plaintiff's seclusion." Counsel voluntarily dismissed this claim at oral argument.

for Summary Judgment is granted.

## II. BACKGROUND[3]

Hamline is a private university in St. Paul, Minnesota. Compl. ¶ 2. Dr. McLane, an associate professor in Hamline's Music Department for nineteen years, served as Thomas' academic advisor. Id. at ¶ 3. Anzelc Decl. [Docket No. 16] Ex. A, (McLane Depo.) at 5. Thomas has experienced depression since she was eleven years old. Anzelc Decl. Ex. E, (Thomas Depo.) at 9. Her symptoms include a lack of energy, a sense of hopelessness, lack of motivation, insomnia, oversleeping, and lack of appetite. Id. at 10. At times her depression has caused her to want to hurt herself, and she has contemplated suicide. Id.

Thomas transferred to Hamline in the fall of 2004 to pursue majors in both music and education as part of the music education licensure program. Id. at 18. In her Educational Psychology class that term, Thomas began to experience problems. Anzelc Decl. Ex. C, (Strait Depo.) at 15. She missed classes, neglected to turn in assignments, and rarely interacted with peers or participated in class. Id. at 15-16. When Thomas informed her professor that she suffered from depression, she was allowed extra time to complete assignments. Id. at 4. When Thomas still could not finish the required work, she asked for, and was granted, a medical withdrawal so that she could retake the class without negative repercussions. Id. at 4-5.

Thomas also had problems in other classes. The professor in her Education and Cultural Diversity course stated that she did not complete projects and was not prepared to present to the class. Anzelc Decl. Ex. B, (Redman Depo.) at 14. He also found her to be "negative,

---

[3] On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

unresponsive, reluctant, and almost mildly defiant." Id. at 21. She failed the class even after deadlines were extended for her. Thomas Depo. at 26-27. Also, a third professor expressed concern to Dr. McLane, as Thomas' education advisor, that Thomas had problems with the performance aspect of her vocal class. McLane Depo. at 39-40. Dr. McLane informally advised Thomas about addressing some of these concerns. Thomas admitted she had trouble interacting with people, but Thomas' performance did not improve. Id. at 49.

Following the informal counseling session, Dr. McLane sent the following email to Dr. Watson, the Chair of the Education Department:

> Dwight:
> I have serious concerns about Jenelle Thomas pursuing music licensure. I won't speak for Janet, but I know she shares my concerns as we have had several conversations about it. Unfortunately we have no academic/content grounds for preventing Jenelle from moving forward. She is quite able to handle the material, quite able to wave her arms as a conductor, she can hear, she's a good pianist and singer, etc. But she's one of the most negative people I've ever encountered. I believe there are serious personal issues that are being covered up, and I find her utterly unsuitable to deal with people in a school setting. Putting our stamp of approval on her as a Hamline grad would be a terrible reflection on our program; it would do her no favors, nor would it be good for potential employers and students. I've talked with Jenelle several times about her suitability for the field and have gotten nowhere. She wants the license, she's doing whatever she needs to do to get it, and nothing I have advised has been taken in by her. She's a Mack truck driving down this road. . . . The only institutional barrier I can foresee putting in her path is to fail her from student teaching. That would (I suspect) get very ugly.

Greenman Decl. [Docket No. 21] Ex. D. In accord with Hamline procedure, Dr. Watson scheduled a case conference with Thomas. Watson Decl. [Docket No. 14] ¶ 2. An initial case conference brings together the student, the student's advisor, and any faculty members who have concerns about the student to provide feedback, elicit student input, and design any appropriate

interventions. Id. at ¶ 3. On April 3, 2006, an initial case conference was held with Thomas, Dr. McLane, and another of Thomas' advisors, Dr. Redman. Id. at ¶ 4. The notes from that conference reflect that the faculty members addressed Thomas' areas of strengths and weaknesses. Id. Ex. B. When Thomas asked for specific areas of concern, she was told those concerns included "interaction with people, ability and willingness to teach music as an *expressive* art, providing reinforcement and encouragement to students, meeting deadlines, and attendance." Id. (emphasis in original). Thomas acknowledged these concerns but claimed she is a "different person" while teaching. Id. To address these concerns and allow Thomas to support her contention, the faculty members instructed her to schedule and teach a lesson that they could observe. Id. Thomas was told she would only need to demonstrate she had the proficiency necessary for student teaching. Id. At the initial case conference, Thomas explained that she suffers from depression, but this fact was omitted from the conference report to protect Thomas' privacy. Thomas Depo. at 42.

Thomas felt the observation plan was unfair and discriminatory and that she was being set up to fail. Thomas Decl. [Docket No. 20] ¶ 7. On April 4, 2006, she visited Hamline's Disability Services Center to inquire about whether she was the subject of discrimination. Id. Based on Thomas' recounting of the case conference, a Disability Services Center student worker sent an email to a disability advocates list serve asking if it was discriminatory for Thomas to have to teach this class "due to her depression and social anxiety." Greenman Decl. Ex. K. Some of the responses to the email indicated that they believed it was discriminatory, and Thomas decided not to set up a teaching observation. Thomas Decl. ¶ 7.

At the end of her 2006 spring semester, Thomas was placed on academic probation for

4

failing two music classes. Thomas Depo. at 48, 50-51. Because Thomas had not performed the observation intervention and the courses she failed were central to the music education curriculum, Hamline decided that Thomas should not pursue licensure. McLane Depo. at 112; Watson Decl. ¶ 8. Watson informed Thomas of this decision in a letter dated July 25, 2006. Id. Thomas requested a second case conference, which was held on September 1, 2006 with Thomas, Dr. McLane, and Watson. Id. ¶ 9. At that meeting, Thomas raised the issue of her depression, and the parties discussed the process of obtaining accommodations.[4] Id. ¶ 10. Despite being told she was unable to pursue licensure, Thomas' course selection indicated that she intended to do so. Id. ¶ 13. She also contacted a teacher in the St. Paul school system who agreed to supervise her should Hamline allow her to proceed to student teaching. Greenman Decl. Ex. S. Watson, Dr. McLane, and other faculty members met on February 2, 2007 when they determined that because Thomas had not fulfilled the observation requirement and did not have an acceptable grade point average in her education courses, she would not be allowed to pursue her music education licensure. Watson Decl. ¶ 13. Hamline informed Thomas of this decision on February 7, 2007. Id.

Thomas commenced this suit in July 2007. In September 2007, Dean Fernando Delgado informed Thomas that Hamline was willing to waive the observation requirement and allow her to pursue licensure assuming she completed the other requirements. Thomas Depo. at 80-81. Dr. McLane raised her concerns with the Dean but was told "it's not our job at this point to tell

---

[4] Thomas originally included a failure to accommodate theory in her Complaint. She made clear in her Memorandum in Opposition to Defendants' Motion for Summary Judgment, however, that she is proceeding under only a disparate treatment theory, and the Court will therefore not recount the efforts of the parties to agree on accommodations. Mem. in Opp'n to Defs.' Mot. for Summ. J. [Docket No. 18] at 17.

someone that they can't go ahead and approach the finish line even though our professional judgment tells them they may not meet all of the requirements. We have made our recommendations, and if she wants to proceed, here's what needs to happen." McLane Depo. at 99. Thomas declined Hamline's offer, decided not to pursue licensure, and stopped taking classes at Hamline. Thomas Depo. at 83.

### III. DISCUSSION

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**A. Disparate Treatment under ADA and MHRA**

Title III of the ADA prohibits disability discrimination in "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42. U.S.C. § 12182(a). The MHRA prohibits discrimination "in any

manner in the full utilization of or benefit from any educational institution, or the services rendered thereby, to any person because of . . . disability." Minn. Stat. § 363A.13, subd. 1. It is also discriminatory to "exclude, expel, or otherwise discriminate against a person seeking admission as a student, or a person enrolled as a student because of . . . disability." Id., subd. 2. For purposes of analysis, courts treat MHRA claims coextensively with ADA claims. See Kolton v. County of Anoka, 645 N.W.2d 403, 407 (Minn. 2002); Heaser v. Toro Co., 247 F.3d. 826, 830 n.2 (8th Cir. 2001); Wilking v. County of Ramsey, 153 F.3d. 869, 872 (8th Cir. 1998).

A person alleging discrimination under Title III must show:

> (1) that [she] is disabled within the meaning of the ADA, (2) that the defendant is a private entity that owns, leases, or operates a place of public accommodations, (3) that the defendant took adverse action against the plaintiff that was based on the plaintiff's disability, and (4) that the defendant failed to make reasonable modifications that would accommodate the plaintiff's disability without fundamentally altering the nature of the public accommodation.

Amir v. St. Louis Univ., 184 F.3d 1017, 1027 (8th Cir. 1999).[5] For the purposes of this motion, Hamline does not dispute that Thomas is disabled within the meaning of the ADA and MHRA, nor does it dispute that it is a private entity that owns, leases, or operates a place of public accommodation. Defs.' Mem. in Supp. of Summ. J. [Docket No. 13], at n.4, 5. Rather, Hamline argues that Thomas' claim fails on the third element because there is no proof that it engaged in disparate treatment based on Thomas' disability by requiring her to agree to a teaching

---

[5] Thomas cites a Fourth Circuit case, Baird v. Rose, 192 F.3d 462 (4th Cir. 1999), arguing that a different analytical standard for the claim applies because Thomas does not seek reasonable accommodations. Pl. Mem. in Opp'n to Mot. for Summ. J., at 18. While Amir did involve an accommodation claim, Amir also alleged disparate treatment, and the court analyzed that claim under Title III of the ADA separately from the accommodation claim using this framework. Additionally, Baird involved analysis under Title II of the ADA making its application here inapposite.

observation as a precondition to continuing to pursue licensure.

Thomas argues that no other student in the history of the music licensure program was required to submit to a teaching observation prior to beginning the student teaching portion of the program, and therefore, such a requirement demonstrates disparate treatment. While Hamline has not required a pre-student teaching observation of a candidate in the music licensure program, it has required observations in other teaching licensure programs. Hamline required that a physical education student engage in a summer, student teaching observation intervention prior to being allowed to student teach on his own. Watson Decl. ¶ 6. In another situation where there was a concern a student could not project the appropriate classroom authority, the faculty developed an intervention for a faculty member to supervise and observe the student prior to student teaching. Id. Interventions have also been designed for music education students when the faculty was concerned about some aspect of their readiness to teach. A student was required to perform an additional recital prior to student teaching to address faculty concerns about his ability to follow licensure requirements. Strait Depo. at 21. Finally, the significance of the fact that Hamline has not imposed an observation requirement on any other music education licensure student is diluted by learning the history of the music licensure program consists of six other students. McLane Depo. at 10.

Additionally, Thomas has not presented evidence from which a reasonable trier of fact could conclude that her disability was the motivating factor behind Hamline's decision to require an observation. Amir, 184 F.3d at 1028. Thomas argues that Dr. McLane's email which mentions placing the "institutional barrier" of failing student teaching in Thomas' path demonstrates that her disability motivated the observation requirement. Greenman Decl. Ex. D.

In that email, Dr. McLane does describe Thomas as "one of the most negative people I've ever encountered" and "utterly unsuitable to deal with people in a school setting." But these comments do not support that Hamline's decision to require an observation was made because of her disability. Id. Rather, Dr. McLane expressed her informed, professional judgment based on her experience as an educator and as a person responsible for ensuring that Hamline graduates meet the requirements of State Licensure Standards.

The State Licensure Standards require, inter alia, that teachers create a positive learning environment and expect teachers to collaborate with colleagues, seek and give feedback with both colleagues and students, and establish a positive climate in both the classroom and in the school as a whole. McLane Depo. Ex. 22. Dr. McLane's concern about Thomas' ability to satisfy these requirements led to her seeking an intervention to allow Thomas to demonstrate a minimum competency to be "positive" prior to being placed in charge of a room full of children. As a general rule, "'courts should show great respect for the faculty's professional judgment.'" Cf. Mershon v. St. Louis Univ., 442 F.3d 1069, 1078 (8th Cir. 2006) (quoting Amir, 184 F.3d at 1028) (finding that the school need not make an accommodation for a student who otherwise failed to meet the necessary standard for admission to the graduate school). Dr. McLane's professional judgment is strong evidence Hamline had good reason to be concerned about Thomas' ability to satisfy these requirements, and Thomas has provided no evidence that Hamline made this decision because of her disability. Dr. McLane identified characteristics of Thomas' personality and demeanor that conflicted with the skill set of a successful teacher and attempted to address that behavior through an observation, an intervention employed by Hamline when the University had similar concerns with other students ability to perform. For these

reasons, Hamline did not violate the ADA or MHRA by requiring Thomas to conduct a teaching observation.

**B.      Dr. McLane's Aiding and Abetting**

Thomas also claims that Dr. McLane aided and abetted Hamline in discriminating against her as evidenced by Dr. McLane's desire to set up "institutional barriers." Under MHRA, it is discriminatory for a person "intentionally to attempt to aid, abet, incite, compel, or coerce a person to engage in any of the practices forbidden by this chapter." Minn Stat. § 363A.14, subd. 2. A prerequisite for an aiding and abetting claim is that there is an underlying discrimination claim under MHRA. Tong v. Am. Pub. Media Group, No. A05-432, 2005 WL 3527273, at* 6 (Minn. Ct. App. Dec. 27, 2005). As addressed above, Hamline did not violate the MHRA, and accordingly, Thomas' aiding and abetting claim must likewise fail.

## IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendants Hamline University and Kathy McLane's Motion for Summary Judgment [Docket No. 11] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:


    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: November 21, 2008.